4576 Reed v. Harlow, Ms. Kennedy, and Mr. Gonzalez. Come on up whenever you're ready. If you're an appellant, you should be on that side, aptly on that side, otherwise you're going to corn fuses. In the Sixth Circuit, they do it the opposite. Do they? Yeah, and it's very confusing. Just remind me not to go to Cincinnati then. Yeah. I almost went west when I went home instead of east. All right, Ms. Kennedy, whenever you're ready. Good morning, Your Honors. Theresa Kennedy on behalf of Mr. Stanley Reed. This case is about equitable tolling, and the District Court in Pennsylvania. Equitable tolling requires extraordinary circumstances and diligence. I mean, just to get to the nub of it, it looks like you admit in your brief on page nine that AEDPA statute of limitations would begin to run here, you argue, on August 7, 2006. And that's when you got the information that the expert witness, Dr. Fay, would have given helpful testimony. But you didn't file your habeas until when? 2009? The habeas was filed right after Dr. Fay gave the affidavit to my client. He signed his affidavit August 12, I think, in 2009. But you knew in 2006 that Fay had possibly good information. I mean, I'm sort of working backwards. I haven't dealt yet with whether these are extraordinary circumstances, but it looks like there's a diligence issue. Well, he had found out that he had reviewed the videotaped exam of the victim subsequent to the PCRA that was ruled untimely, and it wasn't until my client was introduced to the believers behind the wall, the believers, who suggested that he gather the information from Dr. Fay. And that's when the written report of Dr. Fay came through. But Dr. Fay, Mr. Reed's attorney was aware during trial and PCRA about Dr. Fay having seen the girl and examined her, right? Well, he didn't examine her, but he examined the videotape, reviewed the videotape. Mr. Macklin was his trial attorney, and Mr. Reed states that he told him any testimony from Dr. Fay would be unfavorable, which turned out to be a false. So isn't that a question of ineffective assistance of counsel as opposed to not being aware that the evidence was there? Well, it is ineffective assistance of counsel, but the extraordinary act here is the false information given to my client. So he wasn't able to. To qualify as an extraordinary act or extraordinary circumstance, don't you have to show that jurors would come out the other way if they were presented with that information? Yes, and I think the jurors would have come out the other way. But there's a mountain of information that went the other way that was presented, including by a doctor who had done an in-person examination. I mean, there's a raft of evidence. And the evidence of Dr. Fay makes that. I mean, you've got a person who's second-guessing from afar, if you will. Well, without Dr. Fay's testimony. It may contradict a certain small portion of the evidence, but there is a whole bunch of other evidence that isn't even affected by what Dr. Fay would say. Well, Dr. Fay in his affidavit states there was no evidence of any type of injury to the victim. Well, in one particular place. Right. And yet we have lots and lots of testimony about the abuse that this child was put to and other examinations which had results contrary to what Dr. Fay would say from looking at a video. Right. Well, these allegations stem from a divorce proceeding. These allegations came out while he was married to his then-parent wife, who was the mother of the victim. So there's some type of suspicion there to me that these allegations may not have been so accurate. But my point is that I'm trying to make is that had his attorney, Macklin, not told him that Dr. Fay's report would not have been favorable, he would have went and used him as a. Right, but then the question becomes how damaging was that? I mean, it could have been helpful evidence presented at trial, but at the end, as Judge Ross said, there's so much evidence the other way. Well, on the first trial there was a hung jury, so the evidence may not have been so strong. Well, also, I mean, back to reasonable diligence, I mean, you know, it appears in the direct appeal, as the government points out, in the June 2000 brief, you say counsel is ineffective for not calling Dr. Fay, and yet it was years before you sort of got to the bottom of that. It took a long time. You don't have years. And, in fact, even the Superior Court, the direct appeal, mentioned Dr. Fay in the opinion. All the attorneys that Mr. Reed had represented him, I think there were four of them, nobody went to contact Dr. Fay and gather up the report. Out of four attorneys, at least one of them might have done that. Well, apparently it was enough to be able to argue, they did enough to argue that Dr. Fay should have been called back in 2000 they were able to say that. Yes. You may have nailed down some more details. The crux of this whole appeal is that his attorney grossly gave him false information, but not for that type of false information given to Mr. Reed. He may have been found not guilty. But why wasn't something, parenthetically, before you go any further, did you ask for any time for rebuttal? One minute. Okay, one minute. I'm sorry. When you filed your PCRA after the state appeal, so time started back in 2001, did it not, when the state appeal was final? Right. And then if you file a PCRA, it would statutorily toll, but you waited, or Mr. Reed waited nine months to file that. So nine months are used up of your year. When you found out, when he found out in 2006 that there was a problem, didn't he realize at that point he's got at best, he's got three months to go, if we decide that there should be equitable tolling from sometime earlier until 2006, keeping in mind that all of the subsequent PCRA filings before the first one were procedurally defaulted? Well, Mr. Reed is in prison during this time, and human nature is such that you don't know how you're going to react while you're in prison and trying to file all these appeals on time. Did he have counsel for the PCRA? I don't believe so. Okay. But he did have counsel for the appeal? He did have an appellate counsel, and one of his convictions was overturned on other reasons, but still she had not gone and gotten the information from Dr. Fay, the exculpatory information is what I'm referring to. Okay. Why don't we hear from Mr. Gonzales and then we'll go from there. Thank you very much. If you may please the Court, Andrew Gonzales. I'm here on behalf of Respondents Michael Harlow, Mr. Attorney of Lancaster County, and the Attorney General of the Commonwealth of Pennsylvania. As the Court noted, as far as an extraordinary circumstance, the defendant, the petitioner, Mr. Reed, knew on June 28th of 2000 when his direct appeal brief was filed. His appellate counsel actually noted in the brief that she had called Dr. Fay. Is that in the record? Your Honor, that should be with the State Court record, yes. The record, okay. There's a footnote actually in that brief where she indicates she called Dr. Fay. Dr. Fay indicated that there was favorable testimony he could have offered for Mr. Reed, and Mr. Reed or his counsels did nothing beyond that. Certainly, we've gone nine years now, almost 11 years since that filing, and it waited until Ms. Habeas was filed nine years after he found out that information. I certainly don't believe the record supports any inference of reasonable diligence on behalf of Mr. Reed. And as far as an extraordinary circumstance, trial counsel's representation does to the testimony. That was overcome. That extraordinary circumstance was overcome in June of 2008 and bears no relation to the untimely filing. So with that, Your Honor. As my learned colleagues pointed out, there's a raft of evidence, I suppose, supporting this conviction, right? Certainly, Your Honor. With respect to the raft of evidence, there is testimony from the victim. There is testimony from the victim's mother. Rather pointedly, there's testimony regarding the acts perpetrated upon the victim, one of which states, if you do the following, I will get you, I believe it's a stereo. And then there's testimony that immediately following that, suddenly the victim has a brand new stereo that she had wanted. There's also, point the court to its decision in Goldblum v. Clem, where it indicated with an expert testimony simply recasts evidence that was presented at trial. As the court has pointed out here, there was multiple experts that were called. There was different examinations of the victim, direct examinations versus an examination from afar. This is not, again, new evidence. This is evidence that counsel had, counsel chose not to present. Ms. Kennedy's contention that this is all a result of a divorce action and that the ex-wife was, I gather, she was implying that the stepdaughter was being induced by the ex-wife to give false testimony implicating the defendant. Certainly, Your Honor. Those were matters, I believe, addressed at trial as part of the defense and disregarded by the jury, which is a matter for the jury's consideration. They chose to disregard that motivation. If there, if that was a motivation, they found it not to be and found that the testimony of the victim and the wife were credible. Well, but now, if Dr. Fay's testimony had come in, would that have changed the jury's opinion of whether the stepdaughter was credible? Your Honor, I believe it would not affect a reasonable juror's decision in this case, which, as the Court is aware, is the standard here, because you have the testimony from Dr. Hoshauer, who actually did the physical examination. You have the, essentially, this is simply a competing expert report from someone who's viewing a videotape of that examination, is not actually examining the victim. Further, there is more evidence of actions that would have not caused the injury, which would also make Mr. Reed culpable for the offenses he was charged with. So even without, say, an evidence of an injury in that particular instance, there's, again, this mountain of evidence of other acts perpetrated by the defendant, which would have made him liable. I have no further questions. Thank you. Thank you. Ms. Kennedy. Thank you. Dr. Fay's testimony would have brought forth how the injury had occurred to the victim, not that there wasn't any injury, but the allegation is that Mr. Reed used a broomstick to rape her, and after he reviewed the videotape, Dr. Fay, he concluded that there was no injury. But that one incident was just one incident in, what, a couple of years of sexual abuse. Right. The point that I'd like to address the court with is that Mr. Reed has extraordinary circumstances because his trial attorney indicated to him that Dr. Fay's testimony would not be of any help to him. So he's under this assumption for a number of years until he actually went and got the report himself. So based on that, he has extraordinary actions that prevented him from asserting his rights, and he did exercise reasonable diligence in investigating. He kept filing appeal after appeal, PCRA, et cetera. There was a time gap between the appellate division and his attempt to contact Dr. Fay, but at that point he was in prison and he was connected up with the believers behind the walls, and they suggested to him that he should contact Dr. Fay and get the report. It took that long. He had four attorneys, and it wasn't until he went and got the information that it became public. Thank you. Thank you very much. Thank you to both counsel for presenting your arguments.